## COURT OF APPEALS,

### Apr. 2, 1906.

# THE PEOPLE v. CARLO CIARDI.

### (188 N. Y. 145.)

MURDER—SUFFICIENCY OF EVIDENCE.

> The evidence upon the trial of a defendant, indicted for murder, examined and held sufficient to sustain a verdict convicting him of murder in the first degree.

APPEAL from a judgment of the Supreme Court, rendered April 11, 1905, at a Trial Term for the county of Tompkins upon a verdict convicting the defendant of the crime of murder in the first degree.

The facts, so far as material, are stated in the opinion.

*David M. Dean* for appellant. The verdict is not sustained by the evidence. (*People* v. *Smith,* 162 N. Y. 520; *Rupert* v. *B. R. R. Co.,* 154 N. Y. 90; *People* v. *Kennedy,* 32 N. Y. 141; *People* v. *Mondon,* 103 N. Y. 211; *People* v. *White,* 176 N. Y. 331.)

*Willard M. Kent* for respondent.

GRAY, J. The defendant was charged with the crime of murder in the first degree, committed upon Luigi Porgi. His indictment was followed by a trial and he was found guilty by the jury as charged. From the judgment of conviction he has appealed to this court. That the deceased came to his death by violent means was conceded. His body was found, in the early morning of November 30, 1904, in a wood, near the limits of the city of Ithaca, by some laborers. Strewn upon the path, near the spot where the body lay, they had observed a dinner pail, a mitten, a hat and, further on, an overcoat; which led

them to the discovery of the body. There were evidences of a struggle having taken place and a narrow strap was about the neck, tightly drawn. The medical evidence established that death had been caused by strangulation. The body was removed to the morgue and the chief of police caused, at once, the arrest of two persons, who roomed with the deceased at a boarding house, kept by a man named Eagles; one of whom was the defendant. Four persons occupied the room and all were Italian workingmen. The two roommates of the defendant and the deceased were named Palagido Todi and Isadoro Dellavecchia. About six o'clock, that morning, all arose, except Todi; who was ill and remained in bed. The first to leave the house was Dellavecchia and he was followed by the defendant. Soon after, the deceased, also, left the house. Todi fell asleep and, later, was awakened by the defendant; who said that it was eight o'clock and asked if he was not going to get up. The fire, which had been lighted in the stove earlier, had gone out and the room was cold. This indicated the absence of the defendant theretofore. The housekeeper testified to hearing the first man, who left the house, pass by her window and proceed towards the highway to the city; which was in the direction of Dellavecchia's work. She remembered that the second man went in the direction of the wood. Eagles, the keeper of the boarding house, testified that he recognized the peculiar step of the deceased, when he went out of the house; proceeding in the direction of the wood. The deceased was the last of the three to leave and, to reach the place of his employment, he had to pass through the wood. A witness testified to meeting the deceased, on his way to work, at a point just above the wood and to his not wearing any overcoat. That same morning, and at about the same early hour, some other Italian laborers, passing over the path in the wood, heard, ahead of them, a cry, in their own language to the effect that " he is killing me." Hastening forward, they came upon the articles of wearing

apparel in the path and picked up the overcoat; but, hearing nothing more, threw it down again and hastened forward, until they had joined one of their number, who had gone in advance of them. This overcoat they, and a number of other witnesses, identified as having been worn by the defendant. It was placed upon the body, when it was taken to the morgue. The defendant, when arrested, was brought to the morgue and, upon entering the room, exclaimed: " It is Luigi's coat." The significance of this circumstance is that the room, used for a morgue, was an inside one and so dimly lighted that, while the body and the coat could be seen, objectively, by any one entering, it was impossible, according to the coroner and some other witnesses, to identify the features of the corpse, or the color of the coat.

There was evidence of the deceased having exhibited to a friend, in the presence of the defendant, a black pocket book, containing a number of bills for ten dollars, and for lesser amounts, three days before the homicide. A black pocket book was found upon the defendant's person, which contained forty-one dollars, of which sum a part was in ten-dollar bills. Other evidence showed that, within a few days of the homicide, the defendant stated that he had no money; that he had borrowed one dollar of a friend; that he had suggested stealing from another Italian a sum of some five hundred francs which he knew him to have, and that he had been heard to complain of the deceased having money, which he would not spend. While held in jail, awaiting his trial, he made statements, amounting to confessions of his guilt. The witness Todi, detained in prison as a witness, had an interview with him, in which he told him that he, the defendant, was talked about in connection with the murder, and of its having been his overcoat that was found near the scene. The defendant then made this state-ment: " I done the murder, but there is no witness. Nobody can trouble me. They can't do anything with me." Being

asked what he did with Luigi's money, he told the witness that he had hidden it under the ground near Eagles' house. He would not tell him in that conversation the place where it was buried; but, subsequently, he described the spot and told him to bring it and they would divide it. The witness, then, went with the sheriff, the district attorney and two other persons to the spot described and found eighty-three dollars in the ground, wrapped up, as the defendant also had said, in sheets of paper. When Todi, after this, saw the defendant he made some excuse to him for not having been able to get the money; whereupon the defendant asked him to send a man named Graffrei to him, who would know how to get the money and to keep still about it. This was the man, to whom the defendant had previously suggested the stealing of the five hundred francs from a friend. Graffrei had an interview with the defendant, at which he told him where the money was buried and that if he would get the money, he could take out fifty, or sixty, francs. Graffrei was one of those who had recovered the money from its hiding place. In the course of the conversation, the witness remarked upon his having committed the murder and of having left his overcoat in the road. To which the defendant replied that there were others, who would testify that the coat belonged to the deceased. When asked why he did not throw away the overcoat, he said: "Well, I was blind." The defendant told the witness: "If you run away and I am found guilty I can do nothing, but I have three brothers in Italy. They take skin off you." Of another witness, named Lettes, whom the defendant asked to write a letter for him to the "old country," he asked if he was going to be a witness against him. The witness replied that he was and spoke of there being other witnesses and of the overcoat having been identified as belonging to the defendant. The defendant then said: "Even I done the murder, no one was with me. They can't do anything to me."

When the People rested their case, the defendant offered

no evidence in denial, or in explanation; or to rebut the presumptions to which the evidence might give rise. The trial judge submitted the case to the jurors in a charge, to which no exception was taken and which was perfectly fair to the defendant.

We think that the verdict was warranted by the evidence and that no other could possibly have been rendered upon any reasonable view of the facts. The confessions of guilt were abundantly corroborated by the facts and the circumstances excluded the idea of any one else having committed the crime. Of the four men, rooming together, Dellavecchia had proceeded that morning to his work, in a different quarter and Todi was ill and in bed. The defendant was heard to leave the house in the direction of the wood, through which the deceased would have to pass on his way to his work. In the vicinity of the place of the homicide was found an overcoat, which every one recognized as the one worn by the defendant. That he had not taken away his overcoat is explainable from its having been picked up and carried some distance by the Italian laborers and from its being somewhat before daylight. Upon entering the morgue he exclaimed that the coat upon the body was the deceased's; when objects were difficult to distinguish at a distance. A few days before, he appears to have no money and after his arrest a pocket book was found upon him containing forty-one dollars. The persons to whom he admitted his guilt were not implicated in the commission of the crime and were not shown to have any hostile motive in testifying against him. The fact that a large sum of money in bills was found where the defendant had stated to witnesses he had hidden it, as money taken from the deceased, was not, and could not be, explained upon any theory consistent with innocence. A consideration of the circumstances corroborated the statements of the defendant, which were testified to by witnesses, induces no reasonable, if any, hesitation of the mind to conclude adversely

to the defendant's innocence and they sufficiently evidence that the homicide had been committed premeditatedly and deliberately.

None of the rulings upon the trial presents error, or requires discussion. The trial was fairly conducted and justice was accomplished by the verdict of the jury. I advise the affirmance of the judgment of conviction.

CULLEN, Ch. J., EDWARD T. BARTLETT, HAIGHT, WILLARD BARTLETT, HISCOCK and CHASE, JJ., concur.

Judgment affirmed.